# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL P. SKOUTELAS, DENISE P. SKOUTELAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:07cv1077 **Electronic Filing** |
| PORT AUTHORITY OF ALLEGHENY COUNTY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

April 16, 2008

## I. INTRODUCTION

Plaintiffs, Paul P. Skoutelas ("Skoutelas") and Denise Skoutelas ("D. Skoutelas")(collectively "Plaintiffs") filed an amended complaint against Defendant, the Port Authority of Allegheny County ("PAAC" or "Defendant"), raising claims under 42 U.S.C. §§ 1983 and 2201 (Counts I and II), breach of contract and promissory estoppel claims (Count III), a claim of breach of contract in violation of state constitutional rights (Count IV), and a mandamus action. PAAC has filed a motion to dismiss the amended complaint, Plaintiffs have responded and the motion is now before the Court.

## II. STATEMENT OF THE CASE

Skoutelas originally began his employment with PAAC in 1980 as a transit planner/engineer. Amended Complaint ("Am. Comp.") ¶ 10. In 1991, Skoutelas left PAAC to become the Chief Executive Officer of the Public Transit Organization of Orlando, Florida. *Id.* Skoutelas was hired by PAAC on March 31, 1997, to return as its Executive Director/CEO. *Id.* During both periods of employment with PAAC, Skoutelas participated in the PAAC pension plan for non-union employees (the "Plan"). Am. Comp. ¶¶ 12 & 14.

The Plan contained language indicating that it was subject to Section 415 of the Internal

Revenue Code ("IRC"), which caps the annual benefit for ERISA pension plans. Am. Comp. ¶ 16. Section 415 also authorizes governmental employers, such as PAAC, to create a Qualified Governmental Excess Benefit Arrangement ("QGEBA") which permits the creation of a trust for the purpose of paying benefits that exceed the Section 415 limits. Am. Comp. ¶ 17. In August of 1998, PAAC created a QGEBA trust in order to pay pension benefits to those Plan participants whose annual benefits would otherwise be capped under Section 415 of the IRC. Am. Comp. ¶ 18.

On February 22, 2002, PAAC adopted a Resolution which amended the terms of the Plan and established a Deferred Retirement Option Plan ("DROP"). Am. Comp. ¶¶ 26 & 27. Under the provisions of the DROP, a retirement eligible employee would retire for pension purposes only and lock in their monthly pension benefit. Am. Comp. ¶ 27. The pension benefit payment would be recorded in the DROP account, while the employee continued employment with PAAC. *Id.* Upon separation from employment with PAAC, the pension monies accumulated in the DROP account are disbursed from the Plan together with earned interest. *Id.* Thereafter, the monthly pension benefit which was set at the time of DROP participation, is paid directly to the retired employee instead of to the DROP account. *Id.*

Skoutelas requested a calculation of his monthly pension from PAAC if he should retire and enter DROP in 2002. Am. Comp. ¶ 28. PAAC provided him with a monthly benefit calculation of $9,066.54. *Id.* Skoutelas formally entered DROP on July 21, 2002, and the first monthly benefit of $9,066.54 was recorded into his DROP account that same month. Am. Comp. ¶¶ 28 & 29. The monthly pension payments were recorded into Skoutelas' DROP account through September, 2005, when he chose to separate from his service with PAAC. Am. Comp. ¶ 29. Subsequent to his separation, PAAC paid Skoutelas the full amount accumulated in his DROP account. Am. Comp. ¶ 32. PAAC then began making the regular monthly pension

payments to Skoutelas in the amount of $9,061.89[1]. Am. Comp. ¶ 33. Skoutelas' monthly pension benefit was comprised of $5,947.05 from the Plan and $3,114.84 from QGEBA. *Id.*

In March of 2007, PAAC's Board of Directors adopted a resolution discontinuing the QGEBA as to current retirees and future participants effective July 1, 2007. Am. Comp. ¶ 34. After Skoutelas' May, 2007, benefit payment, PAAC discontinued the QGEBA payment and Skoutelas' monthly pension was reduced to $5,947.05. Am. Comp. ¶ 35. PAAC also notified Skoutelas that it deemed the prior payments from the QGEBA to be illegal, and demanded repayment of $64,778.88. Am. Comp. ¶ 36.

### III. LEGAL STANDARD FOR MOTION TO DISMISS

In deciding a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). It had long been part of the Rule 12(b)(6) standard that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Recently, however, the United States Supreme Court disavowed the "no set of facts" language as part of the Rule 12(b)(6) standard, instructing: "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic v. Twombly*, ____ U.S. ____, 127 S. Ct. 1955, 1969 167 L. Ed. 2d 929 (2007). Therefore, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *Twombly*, 127 S. Ct. at 1965; *Phillips v. County of Allegheny*, 515 F.3d

---

[1] At some point, PAAC began to deduct $4.65 per month for dental and vision benefits. Am. Comp. ¶ 33.

3

224, 233 (3d Cir. 2008).

The Court of Appeals for the Third Circuit summarized the *Twombly* formulation of the pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d at 234 (internal citations omitted). In so deciding, a court usually looks "only to the facts alleged in the complaint and its attachments without reference to other parts of the record," *see Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994), but it also may consider "matters of public record . . . and undisputedly authentic documents attached to a motion to dismiss." *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

IV. **DISCUSSION**

Plaintiffs' amended complaint raises two (2) Federal claims, both of which were brought under 42 U.S.C. § 1983 and 42 U.S.C. § 2201. At Count I, Plaintiffs allege that the Resolution was a law which impaired PAAC's contractual obligation to provide Skoutelas with a monthly pension benefit in the amount of $9,066.54, and that PAAC violated the Contract Clause of the Constitution of the United States by adopting the Resolution. The Plaintiffs further contend that by reducing Skoutelas' monthly pension payments, PAAC denied Plaintiffs a property interest without pre-deprivation procedural due process. In its motion, PAAC argues that both of the Federal claims fail as a matter of law, and that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

    A.    <u>Plaintiffs' Section 1983 Claim for Violation of the Contracts Clause</u>

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or

> causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Thus, to establish a claim under Section 1983, a plaintiff must establish the following elements: (1) defendants acted under color of law; (2) defendants violated plaintiffs' federal constitutional or statutory rights; and (3) that violation caused injury to plaintiffs. *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005); *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc).

The Contracts Clause of the United States Constitution provides that "no state shall enter into any . . . Law impairing the Obligation of Contracts." U. S. CONST. art. 1, § 10. In order to prove a violation of the Contract Clause, a plaintiff must demonstrate that "a change in state law has operated as a substantial impairment of a contractual relationship." *Transport Workers Union of America, Local 290 v. Southeastern Pennsylvania Transportation Authority*, 145 F.3d 619, 621 (3d Cir. 1998)(citations and internal quotation marks omitted). This analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial. *Id.* (citing *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)). If a substantial impairment of a contractual relationship has occurred, a court must then ask "whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose". *Id.* (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242-244 (1978)).

For the purpose of its motion to dismiss, PAAC assumes that the Plaintiffs have adequately alleged the existence of a contractual relationship and the substantial impairment of the contract. PAAC argues, however, that the Resolution terminating the QGEBA is not a change in a state law that impairs the relationship. The Court agrees.

In order to fall within the province of the Contract Clause, not only must the contractual obligation be impaired, " . . . it must have been impaired by a law of the State. The prohibition

5

is aimed at the legislative power of the state . . . ." *New Orleans Waterworks Co. v. La. Sugar Ref. Co.*, 125 U.S. 18, 30 (1888); *see also Cross Lake Shooting & Fishing Club v. La.*, 224 U.S. 632, 638 (1912)(stating that the Contracts Clause "is not directed against all impairment of contract obligations, but only against such as results from a subsequent exertion of the legislative power of the State"). The prohibition against such state impairment in the Contract Clause is not aimed at "the decisions of its court, or the acts of administrative or executive boards or offices, or the doings of corporations or individuals." *New Orleans Waterworks Co.*, 125 U.S. at 30. Therefore, this Court must "first consider whether . . . there is shown on [the] record any act of state legislation." *St. Paul Gaslight Co. v. City of St. Paul*, 181 U.S. 142, 147 (1901). Acts of state legislation include not only statutes enacted by the legislature or constitutions enacted by the people of a state, but also by-laws and ordinances of municipal corporations that constitute "an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality." *New Orleans Waterworks Co.*, 125 U.S. at 30-31.

In a case factually similar to the instant action, the United States District Court for the Eastern District of Pennsylvania found that a resolution passed by the Southeastern Pennsylvania Transportation Authority ("SEPTA") which modified the employee benefit plan did not constitute legislative action. *Transport Workers Union, Local 290 v. SEPTA*, 1996 U.S. Dist. LEXIS 10608 (E. D. Pa. 1996). In *SEPTA*, the Board approved a resolution which amended the retirement plan for supervisory, administrative, and management employees (the "SAM plan"), and required enrolled employees, for the first time, to contribute a percentage of their future earnings to the SAM plan. *Id.* at *4-5. Plaintiff filed suit alleging, *inter alia*, that the resolution modifying the SAM plan violated the Contract Clause of the United States Constitution. *Id.* at *2. The court granted summary judgment in favor of SEPTA and the SAM Plan, finding that the resolution did not constitute a "law" for purposes of applying the Contract Clause.

In its ruling, the court defined "legislative power" as the lawmaking power of a legislative

6

body involving actions that relate to subjects of permanent or general character. *Id.* at *10 (citing Black's Law Dictionary 900 (6th ed. 1990)). The resolution at issue related only to the subject of employee benefits which extended to SEPTA employees who were members of SEPTA's SAM Plan. *Id.* at *15. Failing to relate to subjects of "permanent or general character", the resolution "did not possess the characteristics of a law of general application." *Id.* at *14-15 (citing *Contemporary Music Group, Inc. v. Chicago Park District*, 343 F. Supp. 505, 508 (N.D. Ill. 1972). Moreover, the resolution was not enforced against the public, unlike a resolution that would relate to SEPTA's operation of the transit system. *Id.* at 16. It related only to SEPTA's pension plan, and affected only those participating in the plan. *Id.*

In the instant case, Plaintiffs fail to establish that the Resolution was a law of the state, and therefore, subject to the prohibition of the Contract Clause. Further, the Resolution at issue was related only to the QGEBA which permitted the payment of pension benefits to those highly compensated employees whose benefits were capped by IRC Section 415. The Resolution, therefore, does not relate to subjects of permanent or general character nor does it possesses any of the characteristics of a law of general application. The Resolution, therefore, falls woefully shy of constituting "an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality." *See New Orleans Waterworks Co.*, *supra.*

Plaintiffs have failed to establish an impairment of contract by legislative action. Accordingly, the Contract Clause of the United States Constitution does not apply to PAAC's adoption of the Resolution amending the terms of the DROP, and Plaintiffs' claim pursuant to Section 1983 set forth at Count I shall be dismissed. At Count IV, Plaintiffs allege violations of both Article 1, § 10 of the Constitution of the United States and Article I, § 17 of the Pennsylvania Constitution. To the extent Count IV states a claim under the federal Contract Cause, such claim shall also be dismissed. Further, the Contract Clause of the Pennsylvania Constitution provides that "no . . . law impairing the obligation of contracts . . . shall be passed."

7

PA. CONST. art. I, § 17. Because the federal and Pennsylvania Contract Clauses are analyzed identically, *see First National Bank of Pennsylvania v. Flanagan*, 528 A.2d 134, 135 n. 1 (Pa. 1987); *Synagro-Wwt, Inc. v. Rush Twp.*, 204 F. Supp. 2d 827, 848 (M.D. Pa. 2002), Plaintiffs' claim under Pennsylvania's Contract Clause set forth at Count IV must also be dismissed.

> B. Plaintiffs' Section 1983 Claim for Violation of Due Process Under the Fourteenth Amendment to the United States Constitution

Plaintiffs allege that PAAC violated their procedural due process rights by passing the Resolution and terminating payments under QGEBA without providing them with notice and a hearing. Am. Comp. ¶¶ 62-64. In order to o state a claim under Section1983 for deprivation of procedural due process rights, Plaintiffs must allege that (1) they were deprived of an individual interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property, and (2) the procedures available to them did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-234 (3d Cir. 2006)(citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Section one of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. XIV, § 1. This procedural due process guarantee applies only when a constitutionally protected property interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). PAAC assumes for the purpose of this motion that Plaintiffs have a cognizable property interest in the QGEBA benefit payments for Fourteenth Amendment due process purposes, and asserts that the real issue is whether a post-deprivation claim for breach of contract satisfies Plaintiffs' procedural due process rights under the second prong of the analysis. Because Plaintiffs have addressed the issue regarding whether they a have a property right in the QGEBA benefits, the Court will analyze both elements of the procedural due process claim.

State law defines property interests for purposes of procedural due process claims. *See Board of Regents v. Roth*, 408 U.S. at 577. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral

8

expectation of it. He must instead have a legitimate claim of entitlement to it. *Board of Regents v. Roth*, 408 U.S. at 577. A property interest must be based on a legitimate claim of entitlement founded upon state law. *Id.* Legitimate entitlement has been found most often in those benefits that the state has accorded in the past, and that the individual has a reasonable expectation will continue in the future. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999); *see also Ruiz v. New Garden Township*, 376 F.3d 203, 208 (3d Cir. 2004).

The Third Circuit Court of Appeals has thoroughly addressed the question of whether an interest in a contract with a state actor rises to the level of a constitutionally protected property interest. *See Linan-Faye Const. Co. v. Housing Auth. of Camden*, 49 F.3d 915, 931-32 (3d Cir. 1995); *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1397-1400 (3d Cir. 1991); *Reich v. Beharry*, 883 F.2d 239, 241-45 (3d Cir. 1989). Two general types of contract rights are recognized as encompassing property interests protected under the Fourteenth Amendment. The first type is a contract that "confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.'" *Linan-Faye Const. Co. v. Housing Auth. of Camden*, 49 F.3d at 932 (quoting *Unger v. National Residents Matching Program*, 928 F.2d at 1399)). The second type is a contract expressly including a clause providing that the contract may be terminated only for cause. *Linan-Faye Const. Co. v. Housing Auth. of Camden*, 49 F.3d at 932.

The QGEBA was a trust established and funded by PAAC for the purpose of providing additional benefits to those highly compensated employees whose benefits were capped by IRC Section 415. The QGEBA Trust Agreement does not contain an express provision that limits termination of the agreement only for cause. *See* Am. Comp., Exhibit A. Moreover, the QGEBA trust is characterized by none of the qualities that would confer a protected status on the benefits. The QGEBA benefits involve neither the extreme dependence of welfare, unemployment or Medicaid benefits, nor the permanence of a case involving tenure in the

employment sense. Clearly, the QGEBA does not fit within the framework of either of the types of contract rights recognized as encompassing property interests protected under the Fourteenth Amendment.

Notwithstanding the Court's finding that the QGEBA is not an interest entitled to Fourteenth Amendment protection, the Court will review the procedure properly due if in fact QGEBA did satisfy the type of contract right recognized as a property interest under the Fourteenth Amendment.

The Supreme Court has ruled that "[t]he fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986). In rejecting the notion that such opportunity to be heard must be prior to the deprivation, the Supreme Court stated:

> we have rejected the proposition that "at a meaningful time and in a meaningful manner" always requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available.

*Parratt v. Taylor*, 451 U.S. at 540-541. The Supreme Court identified three factors to determine the specific dictates of due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (U.S. 1976).

In this instance, Skoutelas is claiming an interest in an easily quantified monthly retirement benefit provided for a period of time for highly compensated employees of PAAC. Though such benefit is certainly important to Skoutelas, it does not compare to welfare benefits

or permanent employment. Morever, a pre-deprivation administrative hearing before PAAC, would most probably have resulted in the termination of the payments under QGEBA, and the deprivation would not have been mitigated in any event. As such, to require PAAC to provide administrative hearings whenever the Board decided to change an employment and/or retirement benefit is a burden that would not be beneficial in the long run to either PAAC or its employee/retiree. An administrative hearing would not present the "opportunity to be heard . . . at a meaningful time and in a meaningful manner" as would a post-deprivation hearing in state court for breach of contract.

The Court finds, therefore, that a post-deprivation hearing in this case is adequate due process for the alleged deprivation. Plaintiffs' procedural due process claim shall be dismissed.

C. Plaintiffs' State Law Claims

Having dismissed Plaintiffs' federal claims and their claim under the Contract Clause of the Pennsylvania Constitution, the Court declines to exercise supplemental jurisdiction over their remaining state law claims, including the mandamus action. *See* 28 U.S.C. § 1367(c)(3); *Johnson v. Knorr*, 477 F.3d 75, 86-87 (3d Cir. 2007)(refusing to preclude district court's dismissal of state law claims if the Section 1983 claims are dismissed). Plaintiffs' state law claims shall be dismissed.

## V. CONCLUSION

Based upon the foregoing, Counts I, II and IV of Plaintiffs' First Amended Complaint are dismissed with prejudice. Having dismissed the counts upon which this Court's jurisdiction is based pursuant to 28 U.S.C. § 1331, the Court lacks subject matter jurisdiction. Because the Court declines to exercise supplemental jurisdiction over their remaining state law claims, the entire action shall be dismissed. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Eric C. Stoltenberg, Esquire
Lightman, Welby, Stoltenberg & Caputo
220 Grant Street
6th Floor
Pittsburgh, PA 15219

A. Bryan Campbell, Esquire
220 Grant Street
6th Floor
Pittsburgh, PA 15219

Stacey F. Vernallis, Esquire
Andrew F. Szefi, Esquire
Goehring Rutter & Boehm
Suite 1424, Frick Building
437 Grant Street
Pittsburgh, PA 15219